IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID McCLURE,

        Plaintiff,

vs.                                                             No. CIV 00-837 JC/LFG

JOE R. WILLIAMS, Warden, BRUCE TRAVIS,
Infirmary Administrator, and WACKENHUT
CORPORATION,
        Defendants.


## MAGISTRATE JUDGE'S ANALYSIS
## AND RECOMMENDED DISPOSITION[1]

    This is a *pro se, in forma pauperis* civil rights action brought pursuant to 42 U.S.C. § 1983.

Plaintiff David McClure ("McClure") filed this action against Warden Joe R. Williams ("Williams"),

Bruce Travis ("Travis"), and Wackenhut Corporation ("Wackenhut"), alleging that they failed to

provide him adequate dental care while he was incarcerated at the Lea County Correctional Facility

(LCCF) in Hobbs, New Mexico, in violation of the Eighth Amendment.

    Defendant Travis was dismissed from the case for failure to effect service [Doc. 24].  The

Court ordered the remaining defendants to submit a Martinez Report in response to McClure's

allegations that he was, on at least one occasion, affirmatively denied dental care at LCCF, and that

---

[1] Within ten (10) days after a party is served with a copy of this legal analysis and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the analysis and recommendations.  If no objections are filed, no appellate review will be allowed.

at other times the facility failed to provide enough properly trained dental personnel to handle his needs.

After failing to file the Martinez Report on time and being sanctioned therefor, Defendants Williams and Wackenhut did eventually submit the report [Doc. 41]. McClure filed a response [Doc. 43]. The Court found that more information was needed from Defendants, and it ordered a supplemental Martinez Report. Defendants filed the supplemental report on July 26, 2002 [Doc. 60], asking that the Court award them summary judgment on the basis of the two Martinez Reports. The parties were notified in the initial Order Directing Submission of Martinez Report [Doc. 26] that the report may be used in deciding whether to grant summary judgment on Plaintiff's claims.

As noted above, McClure filed a response [Doc. 43] to the initial Martinez Report. He did not respond to the supplemental report, but he did file a motion for appointment of counsel [Doc. 54] and a motion for discovery [Doc. 55]. Defendants filed responses to both of these motions. The Court considers that McClure's two motions, as well as Defendants' request for summary judgment, are now fully briefed and ready for resolution. For the reasons given below, the Court denies McClure's motions for appointment of counsel and for discovery, and grants summary judgment to Defendants.

## Factual Background

McClure alleges that Defendants denied him adequate dental care during his time at LCCF and that he lost several teeth as a result, all in violation of the constitutional prohibition against cruel and unusual punishment. To prevail on this claim, McClure must establish that Wackenhut and Williams displayed deliberate indifference to his serious medical needs to the extent they unnecessarily and wantonly inflicted pain and behaved in a manner "repugnant to the conscience of mankind."

Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994).   A detailed chronology of McClure's dental treatment at LCCF, which follows, demonstrates that McClure could perhaps have received better dental care at that institution. However, that is not the test for a constitutional violation.  The Court finds that, all things considered, McClure has not established that LCCF officials behaved in a manner "repugnant to the conscience of mankind."

Chronology<br>1999

McClure arrived at LCCF on July 3, 1999.  The medical records submitted by Defendants in their Martinez Report indicate that McClure was suffering from dental problems prior to his arrival at LCCF.  (Martinez Report, Doc. 41, Ex. B at 116, 125 126)[2].  There was even some talk of extracting some of McClure's teeth in June, shortly before he came to LCCF.  (Ex. B at 126).

McClure submitted a medical request slip on July 4, 1999, the day after he arrived at LCCF, stating he was suffering from tooth pain and bleeding.  There is no indication that he received any treatment in response to this request; a note on the form says "refer to sick call for dental for 7/5/99," but there is no record that he was seen on that date.  (Ex. B, at 117).

McClure was given an intake examination on July 12, 1999.  No dental problems were noted. On July 20 or 30, 1999 (the date is unclear on the form), McClure appeared at sick call for an unscheduled appointment, complaining of tooth pain.  He was seen by R. Patterson, LPN, who noted

---

[2]Ex. B to the Martinez Report consists of medical requests from McClure and records of service provided him, primarily at LCCF.  The pages of Ex. B were unnumbered by Defendants, but the Court numbered them for its own use.  The Court's page numbers will be referred to in this Analysis as, for example "Ex. B at 1-2."  All references herein to Exhibits without accompanying Document numbers -- as, for example "Ex. D-1" -- refer to exhibits attached to the original Martinez Report.

that "all teeth at the top on left side back gums are rotted" and recommended that McClure be seen by an M.D. for his dental problems.  (Ex. B, at 117).  Rhonda Dunn, RN, who is now Director of Nursing at LCCF but who was at that time a staff nurse, scheduled an appointment for McClure to see D. Pollack, certified nurse practitioner who does not have dental expertise or training.  (Ex. B at 33; Affidavit of Rhonda Dunn, Doc. 60, Ex. A at ¶¶ 15-19).

McClure alleges that he was never seen on July 30, 1999.  He states in his complaint that he had an appointment for July 30, 1999 but that security officers refused him entry to the clinic, stating there was no dentist on duty at that time.  When he asked to see a medical officer, he was again refused, he says. (Complaint, at 2).  He further alleges that he submitted an emergency grievance as a result of this incident but received no response to the grievance.  (Id.).  The Martinez Report establishes that McClure did indeed submit a grievance on August 8, 1999, complaining that, when he went to the medical clinic for his July 30 appointment, security personnel at the door told him there was no dentist at the facility and refused to let him speak to anyone in medical.  (Ex. D-3).  The record also establishes that a response was filed to the grievance, and it was resolved.

The Grievance Response on file, dated August 25, 1999, was written by Bruce Travis.  He stated that McClure was given an intake medical review on July 12, 1999, at which time his medication for toothache was continued.  Travis stated that McClure was "seen by the physician for complaint of toothache pain on 7/30 and 8/9/99," and that although there was no dentist at LCCF at that time, arrangements had been made to provide emergency dental treatment by dentists from other facilities, and McClure was scheduled for the dental clinic on August 27, 1999.  On August 26, 1999, Grievance Officer Lt. Brininstool recommended that the grievance be considered resolved, as the facility had arranged to have an outside dentist come in and McClure had been scheduled for a dental

appointment on August 27.  This recommendation was accepted.  (Id.).

      The August 9 visit noted by Travis is documented in a Medical Encounter Record.  McClure was seen by Nurse Practitioner D. Pollack who noted extensive caries in multiple teeth, some teeth broken and disintegrated almost to the gum line, with erythematous (i.e., redness of the) gums, although no obvious infection or abscess.  Pollack's assessment was that extraction of several teeth was needed due to extensive disintegration; she noted that McClure should be referred to "Dental -- needs immediate attention."  (Ex. B at 32).

      McClure alleges that he only got in to see Ms. Pollack on August 9 when he "managed to get around the security person stationed at the infirmary door and see medical person, Miz Poll[ack], who addressed my dental problem.  Miz Poll[ack] det[e]rmined I needed immediate medical dental attention."  (Ex. B at 111).  McClure further offered to pay out of his own account for a dental visit to Hobbs, and he stated he would be filing a tort claim on account of the poor dental treatment he was receiving.  (Id.).

      As noted above, in response to McClure's August 8 grievance, Travis stated that an outside dentist would be brought in, and McClure would be seen on August 27, 1999.  McClure's Dental Progress Notes for August 27 indicate that he was indeed seen by Dr. Gale Romine, D.D.S., who noted that McClure had "rampant caries"; that teeth # 5, 4, and 30 were bothering him; and that "he wants to save the teeth if possible."  The notes indicate that Dr. Romine "placed IRM," but it is unclear what this means, and there is no indication that any other treatment was given McClure at this visit.  (Ex. B at 125).

      In his complaint, McClure states that the dentist he saw on August 27 (Dr. Romine) said that he was from another facility, and that he had to see a lot of people so he wasn't going to do any

extraction, filling, or anything that required "numbing."  McClure says also that Dr. Romine told him

he needed extensive dental attention and scheduled him for another appointment in two weeks, when

Wackenhut would have a full-time dentist on staff.  Dr. Romine prescribed Motrin for pain and placed

two temporary fillings (although McClure says he needed 12 fillings).  (Complaint, at 3; Ex. D to

Complaint).  McClure says that, after waiting 50 days for this promised appointment, he filed another

grievance.  The record indicates that a grievance was indeed filed on October 15, 1999; it will be

discussed below.

On September 19, 1999, McClure was seen by Nurse Practitioner Pollack for an allergic

reaction to something he ate.  Pollack noted again at this visit that McClure had multiple broken and

decayed teeth, with retracted gums.  She noted in the plan:  "DENTAL REFERRAL NOW."  (Ex.

B at 31).  On this same date, Dental Assistant Cindy Lacey sent McClure's dental x-rays Dr. Tom

Broadbent, DDS, with a note, "left side bothering."  (Ex. B at 125).  Dr. Broadbent is a dentist

employed by Correctional Medical Systems ("CMS") as the Statewide Dental Director.  (Doc. 60,

Ex. A, ¶ 32).

On October 15, 1999, McClure filed another grievance, in which he again complained about

the alleged July 30 incident when security personnel refused him entrance to the medical clinic, and

stated that he only got two of the necessary twelve fillings that he needed when he finally was seen

by Dr. Romine on August 27.  He said he'd been told that Wackenhut would be hiring a dentist in two

weeks, but that was 50 days ago.  McClure went on to say that he had a suggested solution, "before

I start tort proceedings," that would defuse the situation:  He asked to be transferred to another

facility with a dentist on staff.  (Ex. D-2).

He was not transferred.  In his response to this grievance, Travis noted on November 11 that

McClure had been evaluated and treated by a dentist in the clinic on August 27, 1999, that the regional dental director (Dr. Broadbent) reviewed his case and approved McClure for off-site treatment, and that an off-site appointment had been scheduled. Travis further stated that LCCF had been without a full-time dentist since July but that the facility was in the process of contracting with a new dentist, and McClure would be seen by the new dentist or else would be treated off-site on his scheduled appointment date, whichever first occurred. Grievance Officer Brininstool recommended that the grievance be resolved, in that McClure would receive the off-site treatment or be seen by the new LCCF dentist around December 1. This recommendation was accepted. (Ex. D-2).

On October 27, 1999, McClure submitted a medical request, stating he had been in dental pain for awhile. He was referred to "Dental" for a November 1 appointment. (Ex. B at 120). He was seen by Nurse Practitioner Pollack on November 1, 1999. She noted that McClure was complaining of ongoing dental problems including pain due to multiple caries and broken teeth. She prescribed pain killers and also noted that McClure was "somewhat aggressive in manner and demanding re: status of requested transfer for dental care," but that he "later apologized for his manner." Apparently in response to his aggressive complaints regarding the transfer request, she referred him to the "administrator." (Ex. B at 30). The next day, on November 2, 1999, Dr. Broadbent approved off-site treatment for McClure in Roswell. (Ex. B at 125).

Although LCCF officials indicated that the facility would be hiring a new dentist who would start work around December 1, McClure still had not been seen by an on-site or off-site dentist as of December 6. He submitted a request for medical attention on this date, stating he had dental pain and need Motrin. (Ex. B at 121). He was referred to sick call but was noted as a "no show" on December 7, 1999. (Ex. B at 29; Doc. 60, Ex. A at 7).

<u>2000</u>

LCCF hired Dr. John Melton, DDS, as its on-site dentist in January 2000.  (Doc. 60, Ex. A,

at ¶ 40).  Dr. Melton, along with Dr. Ben Smith, an oral surgeon with an office in Roswell, examined

McClure on January 12, 2000.  Dr. Melton noted that McClure's dental condition was "very bad,"

and he and Dr. Smith recommended that all of McClure's "bad" teeth be removed at Dr. Smith's

office off-site, then they would re-evaluate his case.  (Ex. B at 125).  The appointment with Dr. Smith

was scheduled for February 15, 2000.  (Ex. B at 28).

Dr. Smith extracted two of McClure's teeth on February 15.  He noted that McClure "needs

more teeth removed, but does not want to proceed at this time."  (Ex. B at 66, 67).  Upon his return

to LCCF, Dr. Melton saw him and prescribed analgesics for pain at the extraction site.  (Ex. B. at 59,

125).

The records indicate that McClure was a "no show" at the medical clinic on two occasions

in early March.  (Ex. B at 26, 27).  On March 14, 2000, he submitted a Medical Request, stating he

"was supposed to be called in for a checkup" in reference to the dental surgery, and "I need to see

a dentist ASAP.  Please."  (Ex. B at 103).  He was seen on March 17 by Dr. Melton, the LCCF

dentist, who noted aching, sensitivity, and mobility in the teeth.  He prescribed painkillers and

recommended additional extractions.  (Ex. B at 60, 125).

On March 21, 2000, McClure again requested medical attention, stating he had a "bad

toothache."  (Ex. B at 96).  He was seen again by Dr. Melton on March 24.  The note is not entirely

clear but it appears to read, with regard to tooth #30, "changed my mind – decided to save it."  A

return appointment was scheduled, apparently for "endo" treatment.  (Ex. B at 125).  It appears that

McClure was a "no show" on April 9 (Ex. B at 25), but he was eventually seen again by Dr. Melton

8

on April 12.  Again, it is unclear exactly what treatment was rendered on that date, but it appears that some endodontic treatment was performed, and tooth #31 is noted as "doing OK," tooth #21 as being slightly sensitive.  (Ex. B at 124).

McClure is again listed as a "no show" on April 14.  His appointment was rescheduled for April 19, 2000 (Ex. B at 24), but the record does not reflect that he was seen on that date.  On April 18, he submitted a request to see a dentist (Ex. B at 95), but there is no indication he was seen in response to this request.  He submitted another request on April 26, stating he had a toothache and needed to see the dentist soon.  (Ex. B at 99).  Dr. Melton saw McClure on May 1, 2000.  The dentist noted multiple cavities and broken teeth and prescribed Ibuprofen (Ex. B at 58), and it appears that he also smoothed down the broken teeth.  (Ex. B at 124).

On May 15, 2000, McClure again requested dental care, stating he had a bleeding tooth; "It starts and stops for no reason.  It's been doing this all week."  (Ex. B at 98).  He is listed as a "no show" on May 16, 2000. (Ex. B at 22).  On May 23, he again asked for medical care, this time requesting interferon for his Hepatitis C condition and adding, "I've also got a couple of teeth that have [been] bleeding off and on for two weeks."  (Ex. B at 104).  He was seen in the clinic on May 24 for the Hepatitis condition, and the Medical Encounter Record also notes, "refer to dental for tooth problem."  (Ex. B at 19, 20).  There is no record of McClure's having been seen by the dentist after this, and he submitted another sick call request on May 29, 2000, saying he had a "bad tooth ache."  (Ex. B at 100).  He is listed as a "no show" on May 31.  (Ex. B at 21).

McClure filed this action on June 8, 2000.  On June 13, 2000, McClure submitted another Medical Request, stating he had a bad toothache, that his tooth was "rotted all the way into my gum," and it hurts a lot.  (Ex. B at 97).  He was seen on June 30, 2000 for complaints related to his Hepatitis

9

condition (Ex. B at 18), and he was also seen on that date by Dental Assistant Abel Hernandez, who gave him Ibuprofen.  (Ex. B at 124).  McClure is listed again as a "no show" sometime in July (Ex. B at 17); the exact date of the "no show" is unclear, but the rescheduled appointment was set for July 12.  Dr. Melton performed a root canal on McClure, or a partial root canal, on July 14, 2000.  (Ex. B at 124; Doc. 60, Ex. A at ¶ 30).  On August 9, 2000, McClure submitted a Medical Request, stating he'd had a root canal three weeks before and now had pain and numbness in half of his face, which was getting worse.  (Ex. B. at 94).  He is listed as a "no show" on August 9, 2000.  (Ex. B at 16).

On September 11, 2000, McClure again submitted a Medical Request, stating only that he needed to see someone about an "ongoing medical problem."  (Ex. B at 93).  He was listed as a "no show" on September 13.  (Id.; Ex. B at 15).  On October 18, the Dental Progress Notes seem to indicate that doctor was sick, and McClure should make a return appointment for endodontic treatment on tooth #30.  (Ex. B at 124).  On November 6, 2000, Dr. Melton performed this treatment and noted McClure should return for endo treatment on tooth #21.  (Ex. B at 124).

McClure was seen by Dr. Midkiff, DDS, on December 15, 2000. He reported no pain at this time but was given Ibuprofen and Tylenol, to take as needed.  (Ex B at 57, 124).

<u>2001</u>

In 2001, McClure does not seem to have had any dental treatment or made any requests for treatment, until May.  On May 9, he submitted a Medical Request, stating that he had an "unfinished root canal where the temporary filling fell out yesterday" and that it wouldn't stop bleeding and hurt a lot.  (Ex. B at 90).  He was seen on May 10, 2001 by a nurse practitioner, who noted multiple broken teeth and caries in both upper and lower teeth, along with retracted gums.  McClure was

referred to "Dental," prescribed Ibuprofen, and advised to quit smoking.  (Ex. B at 13).

McClure was listed as a "no show" on May 14, 2001.  (Ex. B at 12, 124).  He submitted a note on that date, stating he was one hour late for his appointment, because "everyone had problems going where they were sup[posed] to go, due to restricted movement because the monitors from Santa Fe are visiting the facility."  He asked to be rescheduled, stating again that the temporary filling inserted during the root canal treatment had fallen out, causing pain and bleeding.  (Ex. B at 89).  He was seen on May 15 by Nurse Practitioner Poncik, who noted a hole in one of his teeth, multiple broken teeth, and sensitivity to hot, cold, and air.  He was referred to Dental.  He was offered Ibuprofen but refused, saying it didn't help.  (Ex. B at 11).  Dr. Romine, DDS, examined him on May 16 and replaced the lost filling with another temporary.  (Ex. B at 63, 124).

McClure's next appointment was on June 6, 2001.  The record notes only, "ran out of time." (Ex. B at 124).  There is no Medical Encounter Record for this date and no explanation on the record as to what occurred on this date.  (Doc. 60, Ex. A at ¶ 12; Ex. E at ¶ 3).  On July 10, 2001, McClure submitted a sick call request, stating he had a toothache and needed to see a dentist, and that his last appointment on June 6 was canceled because time ran out that day.  (Ex. B at 87).  He was seen on July 11 by Dr. Romine, who noted that the crown on tooth #12 was fractured, and the tooth would have to be extracted.  He also noted in the Dental Progress Notes that "David wants to go with a full upper denture, but wanted to save #6 and 11."  Dr. Romine explained to McClure that he would need root canal treatment for the dentures, and he referred McClure to the oral surgeon for the necessary extractions.  (Ex. B at 56, 123).

On July 17, 2001, McClure again asked to see a dentist, complaining that his temporary filling had fallen out again the previous night, that the tooth was bleeding, that this was an ongoing problem

and "needs to be fixed right this time."  (Ex. B at 86).  He was seen the next day by Nurse

Practitioner Poncik, who noted that McClure wanted the "root canal finished."  She referred him to

"Dental."  (Ex. B at 8).  He was seen by a dental assistant on July 27, 2001, and an appointment was

made on that date for a temporary filling.  (Ex B at 123).

On August 1, 2001, McClure was not seen in the clinic, but Dr. Romine noted on that date

that McClure had been approved to see the oral surgeon, and he prescribed medication for pain and

swelling.  (Ex. B at 55, 123).  Also on August 1, McClure submitted another grievance (Ex. D-1),

in which he complained that a root canal begun "months ago" was never finished, in spite of several

follow-up visits to the facility's dentist.  He stated he went in for an appointment on July 27 but was

told that the doctor was gone for the day.  He continued:

> Now I've got a painful infection, swelling of the jaw.  I've had a lot
> of problems at this ins[ti]tution in the past trying to rec[e]ive proper
> and badly needed dental care.  I know there is a serious management
> problem when people are in pain and l[o]sing teeth that could have
> been saved by hiring some help for an over extended dental program.

(Ex. D-1 at 2).  The response to this grievance, dated August 28, 2001 and signed by T. Nicholson

RN, noted that McClure had been given an antibiotic and pain medications on August 1, 8, and 15,

and that he was scheduled to be seen by Dr. Smith, the oral surgeon, on September 20.  Nicholson

further noted that Dr. Smith is the only oral surgeon in southeastern New Mexico, that everyone must

wait for an appointment, and that the type of treatment needed by McClure could only be performed

by an oral surgeon.  (Ex. D-1 at 4). The grievance was considered resolved, based on the fact that

McClure was scheduled for oral surgery.  (Ex. D-1 at 3).

The record confirms that McClure was seen by Dr. Romine on August 8 and 15, at which time

it was noted that a root canal had been started on tooth #21, but that the tooth was now abscessed

and needed to be extracted. (Ex. B at 53, 54, 123). On August 28, 2001, Dr. Romine replaced a lost filling in tooth # 23 and noted it might need extraction later. It appears that he also extracted #21 at this visit. (Ex. B at 52, 123).

On September 11, 2001, McClure submitted a sick call request, stating he had a "real bad tooth ache" and needed to see the dentist ASAP. (Ex. B at 82). On September 13, 2001, Dr. Smith extracted all of McClure's upper teeth on an off-site visit. He was given post-op pain medication (Ex. B at 4-6, 62). McClure's dental records end at this point.

<u>**Discussion**</u>

There is no question that McClure had a serious dental condition at the time he arrived at LCCF and throughout the time periods discussed above. Every health care provider who examined his dental condition noted multiple broken teeth, multiple cavities, retracted gums, lost fillings, and occasional abscesses. He complained consistently throughout this time of pain, swelling, and bleeding, and in September 2001, he had all of his upper teeth extracted. There is also no question that Defendants provided medical and dental care for McClure throughout this period in an attempt to alleviate his pain and other symptoms. The issue the Court is called upon to decide is whether Defendants violated McClure's Eighth Amendment rights by deliberate indifference to his admittedly serious condition.

In <u>Estelle v. Gamble</u>, *supra*, the Supreme Court held that, under certain conditions, denial or delay of treatment by prison medical personnel can constitute cruel and unusual punishment in violation of the Eighth Amendment. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth

Amendment."  Id., 429 U.S. at 106.

The deliberate indifference standard has two components, one objective and one subjective. Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321 (1991).  Plaintiff must make a two-part showing: (1) that the medical need was "sufficiently serious," and (2) that the offending officials acted with a culpable state of mind, in that they knew or must have known about the serious medical needs and intentionally refused to provide medical care.  Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 809 (10th Cir. 1999), citing Farmer v. Brennan, supra.

A "serious" medical need is one involving a life-threatening situation, or an instance in which it is apparent that delay would exacerbate the prisoner's medical problem or could result in a lifelong handicap or permanent loss.  A delay in medical treatment does not violate a prisoner's constitutional rights unless he can show that the delay resulted in substantial harm.  Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993); White v. Colorado, 82 F.3d 364, 366 (10th Cir. 1996).

"Intentional refusal" is more than a negligent diagnosis or an inadvertent failure to provide medical care; rather, Plaintiff must show a culpable state of mind to support his claim of denial of a constitutional right.  White, at 367; Handy v. Price, 996 F.2d 1064, 1067 (10th Cir. 1993).

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

Estelle, 429 U.S. at 105-06.

In the present case, McClure has not demonstrated "deliberate indifference," the requisite culpable state of mind on the part of the Defendants.  During his stay at LCCF, he was seen by

dentists, dental assistants, or nurse practitioners approximately 28 times in the three years between July 3, 1999 and September 13, 2001.  On two of these occasions, he was referred to an off-site doctor for oral surgery.

There appear to have been some occasions when McClure requested dental care and it was not given.  However, there are many more times when he received prompt treatment.  The medical records also reflect a number of occasions when appointments and treatment were scheduled, but McClure did not show up for the scheduled appointments.  McClure contends that he never missed an appointment, except when movement was restricted in the facility and he could not make it to the clinic.  However, the record reflects numerous "no shows," and Defendants supplied the affidavit of an LCCF employee who testified that there was no lock-down or restricted movement status on 13 of the dates of McClure's "no shows."

The Court does not resolve the factual dispute as to the events of July 30, 1999, when McClure alleges he was prevented by LCCF security personnel from keeping a medical appointment, whereas Defendants contend that he was in fact seen by medical personnel on that date.  The record is not clear.  But the Court finds that even if this event did occur as alleged by McClure, that one incident does not establish a callous disregard or deliberate indifference to his welfare on the part of the Warden and the facility.  McClure filed a grievance regarding this incident, it was resolved, and he did not appeal the resolution.  And even if he was not seen on July 30, he was examined ten days later by the nurse practitioner on duty at the time.

So, too, the record confirm that at times, dental professionals proposed specific treatment or procedures and McClure declined to undergo the treatment or accept the recommendations.  See, *e.g.*, records for August 27, 1999, February 15, 2000, and July 11, 2001 (Ex. B at 67, 123, 125).

15

The fact that there was not always a dentist available to McClure each time he requested one does not mean that Defendants were deliberately indifferent to his needs.  The facility was without a dentist for several months in 1999, but the record indicates that they were attempting to find and hire one during that period, and that they brought in outside dentists to treat LCCF inmates, including McClure. (Doc. 60, Ex. A at ¶ 42, Ex. B at ¶ 4),  Furthermore, the record shows that McClure was treated by nurse practitioners and dental assistants when a dentist was unavailable, and that pain relief was provided him on multiple occasions.  Dr. Broadbent, statewide Dental Director for CMS during the relevant period, was available to LCCF for consultation by phone, and gave advice or verbal orders for medication.  He was also available during this time to perform the necessary paperwork for off-site visits if an emergency situation arose.  (Doc. 41, Ex. A; Doc. 60, Exs. B, E).

To summarize, McClure complains that his requests for assistance went unanswered, that he was affirmatively denied dental care on one occasion, and that he received inadequate care on other occasions which resulted in lost fillings, an unfinished root canal, and loss of several teeth.  However, his opinion that he did not receive adequate dental treatment at LCCF does not create a standard of care, nor would Defendants' failure to provide optimal treatment violate McClure's right to be free from cruel and unusual punishment.  "[A] prisoner who merely disagrees with a diagnosis or prescribed course of treatment does not state a constitutional violation."  Estelle, 429 U.S. at 107; Perkins, at 811.

Furthermore, the fact that more extensive care, or more prompt treatment, might have been of benefit to McClure is not determinative.  The issue is not whether McClure could have received better care, but whether the Defendants were deliberately indifferent to his needs or intentionally denied him access to necessary dental care.  Estelle.  Even if the dentists who provided care at LCCF

16

were negligent in their treatment of McClure, which the Court does not find it necessary to determine, that would not constitute "unnecessary and wanton infliction of pain." Mere medical malpractice is not actionable under § 1983.

McClure has failed to raise an issue of fact on the subjective element of the deliberate indifference test. Perhaps the care he received could have been better or rendered more promptly. However, the Court finds that whatever failings Defendants demonstrated do not, as a matter of law, rise to the level of a constitutional violation. "[T]he Eighth Amendment prohibits punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain' . . . or are grossly disproportionate to the severity of the crime." Rhodes v. Chapman, 452 U.S. 337, 346, 101 S. Ct. 2392, 2399 (1981). Any alleged deficiency in the quality of dental care rendered to McClure at the LCCF survives this exacting inquiry.

### Recommended Disposition

1. That summary judgment be granted in favor of Defendants and all of McClure's claims be dismissed; and

2. That McClure's Motion for Appointment of Counsel [Doc. 54] and Motion for Discovery [Doc. 55] be denied as moot.

Lorenzo F. Garcia
United States Magistrate Judge